**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **AUDREY JORMAN**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) **CAUSE NO.  1:05-CV-1843-SEB-JMS** |
| | ) |
| **STATE OF INDIANA, FAMILY &** | ) |
| **SOCIAL SERVICES ADMINISTRATION,** | ) |
| **and P. MICHAEL HEDDEN in his** | ) |
| **individual and official capacities**, | ) |
| | ) |
| Defendants. | ) |

**E N T R Y**
**on**
**Defendants' Motion for Summary Judgment (doc. no. 31)**

Plaintiff Audrey Jorman, an African-American woman, was employed as a Vocational

Rehabilitation Counselor with the Indiana Family & Social Services Administration ("FSSA")

from 1974 until October 2006.  On August 31, 2004, Defendant Phillip Michael Hedden, FSSA's

Director of Rehabilitation Services as well as Director of the Bureau of Rehabilitation Services,

suspended Ms. Jorman without pay in the midst of an investigation into home-modification

contracts that she administered for FSSA's disabled clients.  In December 1995, Ms. Jorman

filed the present suit against the State of Indiana, the FSSA, and Mr. Hedden.  The first count of

her Complaint alleged that Indiana and the FSSA discriminated against her on the basis of her

race, in violation of Title VII, 42 U.S.C. § 2000e-5, *et. seq.*  This count was eventually

voluntarily dismissed.

1

The second count, the only one remaining, is asserted against Mr. Hedden in his official and individual capacities under 42 U.S.C. § 1983 alleging that Ms. Jorman's due-process rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated when she was suspended without adequate notice and hearing.  On October 27, 2006, Ms. Jorman's employment with FSSA was formally terminated.  No state or federal criminal charges or civil actions have been filed against her related to her handling of home-improvement contracts.  Mr. Hedden now moves for summary judgment on Ms. Jorman's due-process claim.  For the reasons set forth below, the motion is granted.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Although all reasonable inferences from the evidence shall be drawn in favor of the non-moving party, the non-moving party cannot rest upon her pleadings but must demonstrate a genuine issue of material fact by presentation of specific evidence.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## Background

We summarize Ms. Jorman's responsibilities with FSSA and the facts that led to her suspension.  Although the parties devote much of their briefs to alternative statements and interpretations of these underlying facts, their differences are not material to resolution of the pending motion for summary judgment.[1]

---

[1] Ms. Jorman devoted considerable effort to presenting evidence and assertions that she is not guilty of wrongdoing in her handling of the home-modification contracts.  That issue,

Ms. Jorman, as a Vocational Rehabilitation Counselor ("Counselor"), was employed in FSSA's Bureau of Vocational Rehabilitation ("Bureau") which was part of FSSA's Division of Disability, Aging, and Rehabilitation Services ("Division"). She reported immediately to an Area Supervisor who in turn reported to one of five Region Managers in the Bureau. The Region Managers reported to the Bureau's Director, Mr. Hedden.

Ms. Jorman's responsibility as a Counselor was to assist people with disabilities to obtain or retain employment which included arranging for modifications to their residences. If a home modification was indicated or requested by a client, a Counselor referred the client to an outside evaluator (usually an engineer or occupational therapist) who inspected the client's residence and reported any necessary modifications to the Counselor. The Counselor obtained bids from construction companies for any of the reported modifications that the Counselor determined to be necessary to achieve employment goals for the client. The client selected the bidding companies on her own or from a list of companies provided by the Counselor. For modifications totaling more than $600, the Counselor was required to obtain bids from at least two companies. FSSA policy required that the bids be competitive. With rare exceptions, the Counselor was required to select the lowest bid obtained. Following completion of the work, the evaluator returned to the residence and inspected the work for compliance. The modification company's bill was sent to the Counselor who completed a claim voucher form. If the voucher exceeded $25,000, then the approval of the Area Manager was required. The voucher was submitted to

---

however, is irrelevant to the question of whether Mr. Hedden violated her due-process rights and she did not argue or present evidence showing that Mr. Hedden's and the FSSA's suspicions of her conduct were so obviously baseless that they must have been false.

FSSA's Claims Management Section which reviewed it only for technical accuracy[2] and forwarded it to the State Auditor's Office for payment.

When Mr. Hedden became Director of the Bureau in April 2003, he instituted a change whereby any home-modification voucher exceeding $15,000 would be pulled by the Claims Management Section and forwarded to him for his personal approval.  Mr. Hedden routinely asked the responsible Region Managers to review such vouchers, the supporting documentation, and the associated case files for compliance with policy and procedure and appropriateness of the claim.

In or about June 2004, Mr. Hedden referred one of Ms. Jorman's vouchers to her Region Manager, Ken Williams, for review.  At about the same time, Ms. Jorman's Area Manager asked Mr. Williams to review another of Ms. Jorman's vouchers because she was uncomfortable with the services and payment that Ms. Jorman had authorized.  Mr. Williams also had a third case file of Ms. Jorman's to review at the time.  Certain similarities in the three cases caused Mr. Williams to suspect that the bidding might not have been competitive.[3]  Mr. Williams thus undertook a review of all contracts awarded to the winning bidder in the three vouchers, Express Construction, dating back to 1999 and discovered that the company had been paid more than one million dollars.  He viewed this as a suspiciously high amount for one Counselor to award for

---

[2] The Claims Management Section apparently verified only that the voucher form was completed accurately.  It did not review the substance of the amount claimed for accuracy or compliance with policy.

[3] Mr. Williams noticed that (1) the same two companies, Express Construction and C & C Construction, had bid for all three contracts; (2) Express Construction had won all three contracts; (3) although on different letterhead, the wording of the competing bids was identical; and (4) the differences between the winning and losing bids were nearly identical.

that time period to only one company.  He also noticed that only Ms. Jorman regularly engaged

Express Construction.

Approximately one week later, Mr. Williams reported his findings to Mr. Hedden.  On

June 18, 2004, Mr. Hedden requested an internal investigation.  FSSA's Director of

Investigations, Wendell Hoskins, along with one of his senior investigators, began the

investigation.  Additional information that they developed in the course of their investigation led

them to suspect that Ms. Jorman must have known that bidding in her cases was not competitive,

that she might have had a relationship with the winning bidder, and that she might have received

kickbacks.[4]

In a meeting that occurred on either August 26 or 27, 2004, Mr. Hoskins presented his

findings to Mr. Hedden and to his Division Director, after which the Division Director convened

a meeting of other FSSA personnel to discuss the results of the investigation to date and to

determine the next steps to take.  The meeting included Mr. Hoskins, Mr. Hedden, a member of

FSSA's Human Resources Department, FSSA's General Counsel, a Deputy General Counsel,

and FSSA's Legislative Liaison.  An Assistant State Personnel Director was consulted *via*

telephone.  Mr. Hoskins was opposed to Ms. Jorman's remaining in the workplace where she

might have the ability to destroy evidence or otherwise compromise the ongoing investigation.

---

[4] The investigation revealed that (1) Express Construction ("Express") and C & C
Construction ("C & C") often submitted bids for the same contracts; (2) Express always
submitted the lowest, and C & C the highest, bids; (3) two other companies, Indy Quality Home
Improvement ("Indy") and Arrow Construction ("Arrow"), also submitted suspicious bids in Ms.
Jorman's cases; (4) bids submitted by Express, Indy, and Arrow described the work to be
performed in identical language and listed identical addresses and telephone or fax numbers; (5)
Express, Indy, and Arrow were incorporated by the same individual, John Dost.

Mr. Hedden therefore recommended that Ms. Jorman be suspended while the investigation continued and the Division Director approved her suspension.

**Ms. Jorman's suspension.**  Ms. Jorman did not contest the paragraphs of Defendants' Statement of Material Facts Not in Dispute regarding the facts surrounding her suspension. These paragraphs are quoted from that submission, without evidentiary citation:

> 59.  On August 31, 2004, Williams and Hedden met with Jorman in Williams' office.
>
> 60.  Hedden told Jorman a routine review of a claim voucher that had been submitted by Jorman raised a concern about a potentially inappropriate relationship between her and a provider of home modification services.  Hedden further informed Jorman that the serious issues raised by an initial investigation required a pre-deprivation meeting, and that Jorman need to obtain union representation.
>
> 61.  Jorman contacted her union, and the pre-deprivation meeting was held later that same day.
>
> 62.  Hedden, Williams, Jorman, and union representative Dave Miller were present at the pre-deprivation meeting held on August 31, 2004.
>
> 63.  At the pre-deprivation meeting, Hedden asked Jorman about her relationship with Express Construction.
>
> 64.  At the end of the pre-deprivation meeting, Jorman was given a written notice by Hedden stating that she was "on Emergency Suspension without pay pending the outcome of an internal investigation into an alleged inappropriate purchase of service relationship with a home modification vendor."
>
> 65.  The internal investigation continued after Jorman was suspended.

(Memorandum in Support of Defendants' Motion for Summary Judgment (doc. no. 32), Statement of Material Facts Not in Dispute ("DSMF") ¶¶ 59-65, p. 11).  Because Plaintiff has not disputed the accuracy of these statements and our examination reveals that they accurately relate the cited supporting evidence, they are taken here as true.

**Post-suspension investigation.**  After Ms. Jorman's suspension, investigation of her

handling of home-modification contracts continued.  Although she disputes some of Mr. Hedden's representations of the facts, she does not dispute that FSSA continued to investigate and that the matter was referred to the Indiana State Police, the Indiana Inspector General, and the Marion County Prosecutor, all of whom commenced their own investigations or reviews of her conduct.  Ms. Jorman also does not dispute that, after her suspension, FSSA compared the handling of her cases with other counselors' cases, interviewed her clients, inspected the work performed by her contractors, and considered whether and which FSSA policies and procedures were violated.  (DSMF ¶¶ 66-69).  Ms. Jorman presented certain additional facts, to wit, that, in May 2005, the Indiana State Police searched her residence and seized her financial records and computer and that Mr. Hedden and an FSSA investigator attempted to schedule an interview with her in August and September 2005.  (Plaintiff's Response to Defendants' Motion for Summary Judgment (doc. no. 40) ("Response"), Statement of Material Facts At Issue ("PSMF") ¶¶ 90, 96-100, pp. 6 and 7).

**Ms. Jorman's termination and administrative appeals.**  On October 27, 2006, FSSA sent a letter to Ms. Jorman, under its Personnel Director's signature, terminating her employment effective upon receipt.  (Designation of Evidence in Support of Defendants' Motion for Summary Judgment (doc. no. 33), Exhibit 7 to Jorman Deposition (Exhibit B)).  The letter recites that a "predeprivation meeting" was held on October 25, 2006 which Ms. Jorman attended.  *Id.*  No reason is specified for the termination, but the subject of the letter is recorded as "Predeprivation Meeting Outcome / Violation of Policy and Procedure."  *Id.*  The "findings of the investigation" were presented at the meeting and Ms. Jorman's response to each allegation is quoted as "not able to comment at this time."  *Id.*

Ms. Jorman filed an administrative appeal which is still pending.  Neither side presented, by argument or evidence, the dates or other details of this appeal.  It is apparent, however, that, at some point after her suspension and before her termination, Ms. Jorman also filed a grievance with her union, followed by an appeal with the State Employees Appeals Commission ("SEAC").  (PSMF ¶¶ 103 and 104).[5]  The substance of any claims or arguments asserted in her administrative appeal has not been presented to us. On October 12, 2006, shortly before her termination, the SEAC's Chief Administrative Law Judge ("ALJ") issued an interim ruling on Ms. Jorman's motion requesting the ALJ deem her suspension a *de facto* termination and, therefore, proceed to schedule a termination hearing.  The ALJ agreed with the FSSA's response that, because the Marion County Prosecutor was still considering criminal charges against Ms. Jorman, the law permitted the FSSA to continue her suspension until a prosecutive determination was reached.  He denied Ms. Jorman's motion but advised FSSA to maintain contact with the prosecutor's office and indicated that he would schedule periodic status conferences. (Submission of Exhibits in Support of Plaintiff's Response to Motion for Summary Judgment (doc. no. 40), Exhibit 1-B to Jorman Affidavit (Exhibit 1)).  In her May 2007 response to the present motion, Ms. Jorman states that her administrative appeal now includes both her suspension and termination and that no hearing before the SEAC has been conducted.  (PSMF ¶¶ 105 and 106).

## Claims

Ms. Jorman's Complaint asserts that she "was suspended indefinitely without pay, rather

---

[5] Ms. Jorman's description suggests that her grievance was invalidated when union representation for state employees was terminated and that she then filed her SEAC appeal.

than fired," Complaint ¶ 26, and that "[b]y suspending indefinitely, the State has attempted to

continue to assert control over Jorman as a state employee, while denying her rights to have her

termination reviewed for just cause", *id.* ¶ 27.  She claims that her "rights to due process were

denied by the decision of Defendant P. Michael Hedden to indefinitely suspend her employment

without pay," *id.* ¶ 28, which violated her rights under the Fifth and Fourteenth Amendment to

the United States Constitution, *id.* ¶ 30, and caused her to suffer damages, *id.* ¶ 29.

Ms. Jorman seeks a judgment against "Defendants" for compensatory damages for her

"emotional pain and physical pain," *id.* ¶ 3, and against Mr. Hedden for punitive damages in

order to deter future due-process violations, *id.* ¶ 4.[6]  She also requests pre- and post-judgment

interest and attorney's fees.  *Id.* ¶¶ 5 and 6.

The Court notes that Ms. Jorman asserted her claim of a due-process violation against all

three defendants, Complaint, p. 1,[7] but has since stipulated to the dismissal of the State of

Indiana and the FSSA as defendants.[8]  (Response, pp. 9-10).  She therefore now seeks damages

[6] Ms. Jorman's first prayer for relief — an injunction ordering the FSSA to cease, and to take measures to prevent, racial discrimination — was related to her dismissed first count asserting violation of Title VII.  She also prayed that FSSA pay to her the value of her lost income and benefits, without specifying under which claim, but she has since dismissed Count 1 and dismissed FSSA as a party.

[7] "Plaintiff, Audrey Jorman, brings action against the Defendant, State of Indiana and its Family & Social Service[s] Administration for racial discrimination in employment in violation of Title VII and for violation of Plaintiff's due process rights; and against P. Michael Hedden, in his individual and official capacit[ies,] for violation of Plaintiff's due process rights."

[8] This Court has previously recognized that "FSSA . . . is an agency of the State of Indiana, and is considered 'the state' for the purposes of Eleventh Amendment immunity" and that Congress did not abrogate that immunity when it enacted § 1983.  *Baker v. Indiana Family & Social Services Administration*, 260 F.Supp.2d 731, 736-37 (S.D. Ind. 2003).

9

against only Mr. Hedden to compensate her for her pain caused by the alleged due-process violations and to deter future violations.

Mr. Hedden has moved for summary judgment on the ground that Ms. Jorman's suspension without pay did not deprive her of a property interest to which due-process rights attached; alternatively, he asserts that she was afforded due process when she was suspended; and that he is entitled to qualified immunity because it was not clearly-established that due-process protections applied to her suspension.

### Due-Process Standard

Under the Fourteenth Amendment to the Constitution of the United States, "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." A court undertakes two inquiries when analyzing a due-process claim:

> First, the court determines whether the plaintiff possesses a protected life, liberty or property interest as a matter of substantive law. If that first inquiry yields an affirmative response, the court proceeds with a second inquiry — what process is due before the plaintiff can be deprived of that protected entitlement?

*Listenbee v. City of Milwaukee*, 976 F.2d 348, 351 (7th Cir. 1992). Ms. Jorman contends that she has a property interest in her state employment of which Mr. Hedden deprived her without due process of law. (Response, p. 10). She has neither asserted nor argued that Mr. Hedden's actions deprived her of a liberty interest. *See, e.g.*, *Boyd v. Owen*, 481 F.3d 520, 524 (7th Cir. 2007). The source and scope of property interests in public employment are found in state, not federal, law; federal law mandates only the applicable procedures when property interests are deprived. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) ("Property interests are not created by the Constitution, 'they are

10

created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'").

Once a court establishes that an individual has a property interest in continued state employment, it must determine the minimal procedures which the state must follow before it may deprive her of it.  The two, basic due-process guarantees are notice to the employee and an opportunity for hearing.  Because due process is a flexible, context-specific requirement, *id.*, 470 U.S. at 542-47, 105 S.Ct. at 1493-96; *Luellen v. City of East Chicago*, 350 F.3d 604, 614 (7th Cir. 2003), the precise nature — timing and content — of these required elements depends on a consideration of the competing interests at stake:  the private interest of employees in retaining their employment, the government's interests in expeditious terminations of unsatisfactory employees; and the risks of erroneous terminations.  *Loudermill*, 470 U.S. at 542-43, 105 S.Ct. at 1493.  *Loudermill* held that public employees with property interests in their state jobs must be afforded pre-termination notice of, and opportunity to respond to, the grounds for their termination and a "full post-termination hearing."  *Loudermill*, 470 U.S. at 545-48, 105 S.Ct. at 1495-96.[9]

_____

[9] The Court wrote:

> [T]he pretermination hearing need not definitively resolve the propriety of the discharge.  It should be an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.
>
>       *       *       *
>
> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.
>
>       *       *       *

**Discussion**

There is no dispute in this case that Ms. Jorman was a "merit" or "regular" employee who could be terminated only for cause under Indiana law.  Ind. Code Ann. § 4-15-2-34 (West 2006 Cum. Supp.).  As such, she could not properly be terminated without being afforded a pre-termination notice and opportunity to respond and a full post-termination hearing.  The substantive issue in Ms. Jorman's case, however, is whether the due process clause required Mr. Hedden to follow certain  minimal procedures when he suspended her without pay.

Ms. Jorman contends that her August 2004 suspension without pay required pre-termination notice and hearing and a comprehensive post-termination hearing, which she did not receive.[10]  In essence, she argues that Ind. Code Ann. § 4-15-2-34 gave her a property interest in not being "indefinitely suspended" without due process of law.  But property interests are created and defined by state law and the immediately preceding section of the Indiana Code provides:

> An appointing authority, the appointing authority's designee, or the ethics commission may, for disciplinary purposes, suspend without pay a regular employee for a length of time as the appointing authority, the appointing authority's designee, or the ethics commission considers appropriate, not exceeding thirty (30) days in any twelve (12) month period.  *With the approval of*

---

Our holding rests in part on the provisions in Ohio law for a full post-termination hearing.

\*        \*        \*

We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by Ohio statute.

*Loudermill*, 470 U.S. at 545-48, 105 S.Ct. at 1495-96 (citations omitted).

[10] Ms. Jorman asserted no claims regarding the constitutionality of the procedures attending her October 2006 formal termination.

12

> *the director a regular employee may be suspended for a longer period pending the administrative investigation or trial of any charges against the employee.* If the outcome of the charges or trial of any charges is favorable to the employee, the appointing authority shall reimburse the employee any lost wages and benefits for the suspension period less any wages the employee might have earned during the suspension period from other employment.

Ind. Code Ann. § 4-15-2-33 (West 2006 Cum. Supp.) (emphasis added). "[T]he existence of a property interest depends upon '"explicitly mandatory language," in connection with the establishment of "specified substantive predicates" to limit discretion.'" *Listenbee*, 976 F.2d at 353 (quoting *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460-63, 109 S.Ct. 1904, 1908-10, 104 L.Ed.2d 506 (1989)). Consistent with the *Listenbee* Court's finding in examining a more restrictive Wisconsin statute limiting a tenured employee's suspension to a "reasonable period" and granting hearing rights for subsequent suspensions, this Indiana statute contains no explicitly-mandatory language limiting state actors' discretion to suspend merit employees pending investigation or trial of charges.

Reading §§ 4-15-2-34 and 4-15-2-33 together, it is clear that a merit state employee does not have a property right not to be suspended without pay pending administrative investigation or a trial on the charges. Because such a suspension clearly can cause severe personal consequences for an employee, especially when experience shows that investigations and trials, even when conducted efficiently and in good faith, can be protracted, an argument could be made that, in the absence of § 4-15-2-33, such lengthy suspensions deprive an employee of her property interest in her pay and benefits. But Indiana has not done so, choosing instead to define the scope of its merit employees' rights to include § 4-15-2-33's possibility of investigatory and trial suspensions without pay, which are "indefinite" time periods inasmuch as their duration is defined not by pre-determined periods of time but by the indefinite length of the investigatory

13

and/or court proceedings.  Section 4-15-2-33 is, therefore, an integral part of merit employees'

property interests in their jobs and those interests as therein defined do not include the right not

to be suspended pending investigations or trials without due process.

Ms. Jorman advanced some of her arguments against the validity of this statutory basis

for her suspension.  First, she argued that Mr. Hedden's explanation of the basis for her

suspension during the August 2004 "pre-termination meeting" was a lie because, contrary to his

explanation that the investigation had begun two or three months earlier, in fact, the

investigation had begun more than a year earlier, (PSMF ¶ 88; Response, p. 11), and had already

been completed by the time of her suspension, (Response, p. 16).  In short, she contends that her

suspension did not meet the requirement of the statute that it be "pending the administrative

investigation . . . of any charges" because there was, in fact, no investigation pending.

As Mr. Hedden pointed out, Ms. Jorman relies on a mistake in Mr. Hedden's testimony

wherein he states that FSSA's internal investigation into her performance began in May or June

of 2003 when the context and other evidence clearly reveal that he actually meant to say that the

investigation commenced in May or June of 2004.  Ms. Jorman provided no citations to evidence

supporting her assertion that "there was no investigation going on when the suspension was

continued" and that "[t]he investigation had basically been completed by Hedden and his agents

when the pretermination meeting occurred in August 2004."  (Response, p. 16).  She did not

contradict by citation to any evidence Mr. Hedden's assertions, which were supported by

evidentiary citations, that FSSA's internal investigation continued after her suspension.  (DSMF

¶¶ 65-69).  In fact, it was Ms. Jorman who adduced the additional facts that the Indiana State

Police had searched her home and seized records and a computer in May 2005, (PSMF ¶ 90),

14

and that Mr. Hedden and an FSSA investigator attempted to arrange an interview with her in August and September 2005, (PSMF ¶¶ 96-101), thereby indicating that investigations continued.

It appears that the primary rationale for Ms. Jorman's assertion that no investigation was pending after her suspension was that, at that time, FSSA's internal investigation was complete and it was "merely shopping a potential criminal case to law enforcement agencies," which does not constitute a "pending investigation" under the statute. (Response, p. 17). However, she has failed to support this assertion either factually or legally. As explained above, she did not point to any evidence that contradicts the evidence Mr. Hedden cited to show that FSSA's internal investigation continued after her suspension. Because "[t]he Supreme Court has accorded a 'presumption of honesty and integrity' to administrative decisionmakers," *Swanson v. Village of Lake in the Hills*, 962 F.2d 602, 605 (7th Cir. 1992), mere allegation or hope for alternative inferences is not enough to create a genuine issue of fact. In addition, Ms. Jorman supplied no legal authority or explanation for her interpretation that § 4-15-2-33 authorizes suspensions pending only internal investigations conducted by the employee's employing agency. The Court agrees with Defendants that the natural, common-sense reading of "pending the administrative investigation or trial of any charges" encompasses all investigation and litigation activities related to the charges that occur between the time of the employee's suspension and completion of court trial, whether conducted by the employing agency, other relevant state agencies such as the State Department of Personnel, state or local criminal or civil law-enforcement agencies, or prosecution and civil-litigation agencies. In the absence of legal authority to the contrary, we adopt this interpretation. It would be, indeed, a strained reading of the statute indeed to hold that

15

it permits an agency to suspend its employee only during its own internal investigation, requires the agency to reinstate the employee if the matter is referred to law enforcement agencies for further investigation and then to prosecutors or civil litigators for consideration of criminal and/or civil actions, and then permits the agency to suspend the employee again if a criminal or civil action is commenced.

Ms. Jorman has not disputed that the Indiana State Police and the Indiana Inspector General conducted investigations of the charges against her after her suspension; neither did she dispute that the matter was referred to the Marion County Prosecutor who was considering criminal charges following her suspension.  As described above, the ALJ in Ms. Jorman's SEAC appeal also found that, as late as October 2006, the Marion County Prosecutor was considering charges against her.

As a second attack on the statutory basis for her suspension, Ms. Jorman contends that "[t]he reason that [she] was suspended indefinitely was because the FSSA investigators thought they would have more control over her as a suspended state employee."  (PSMF ¶ 86). (Response, p. 14 ("She was kept on indefinite suspension because Hedden believed he could keep better control over her if Jorman had not yet been dismissed").  In the two parts of his deposition cited by Ms. Jorman, Mr. Hedden states that FSSA's investigators requested that Ms. Jorman not be terminated because it would give them "more access" to her, not "control over" her, as characterized by Ms. Jorman.  (Heddon Deposition, pp. 25 and 27).[11]

---

[11] Mr. Hedden also asserted that both the Indiana State Police and the Indiana Inspector General requested that FSSA not terminate Ms. Jorman.  (DSMF ¶ 72).

More importantly, Ms. Jorman does not explain the manner in which this request or reason for suspending, rather than terminating her, is inconsistent with a good-faith suspension pending investigation under the statute.  She does not assert, or point to evidence showing, that the investigators' desire to have better access to her as an employee was the sole, or even primary, reason that the separate FSSA decision makers decided not to terminate her in August 2004.  In the deposition exchange, Jorman, herself, has cited, Mr. Hedden testified that, absent the investigators' request, his recommendation would not have been to terminate Ms. Jorman but to keep her on the job until the investigation was complete.  Ms. Jorman presents no evidence or argument supporting an inference that the responsible state officials already had decided to terminate her but that the requests of the investigators caused them to maintain her on a sham suspension regardless of the pendency of an investigation.  Further, she fails to cite any evidence to establish that the investigators and law-enforcement agencies had concluded that there were sufficient grounds to terminate her at the time of her suspension.  Ms. Jorman does not dispute Mr. Hedden's assertion or evidence that, at the meeting of FSSA decision makers where the determination was made to suspend Ms. Jorman, the investigators advised  that they "did not want Jorman in the workplace, where she may be able to destroy documentary evidence or otherwise compromise the ongoing investigation," (DSMF, ¶ 55), which was consistent with a motivation to suspend Ms. Jorman pending an investigation, but not to terminate her.

Ms. Jorman accordingly has failed to demonstrate a genuine issue of fact that is material to the question of whether she was suspended pending administrative investigations into the charges against her.

We note in passing that Ms. Jorman might have suggested another basis for a due-process

17

violation but, if she intended to do so, then she failed to factually or legally develop the argument.  At one point in her Response, she described the issue in this case as whether it was a denial of due process to "leave her on indefinite suspension from August 31, 2004 to October 26, 2006" and that she was "entitled to have the Defendants take timely action so she could exercise her due process rights." (Response, p. 1).  She later asserted that Mr. Hedden deprived her of her due-process rights by "leaving her in limbo from August 2004 to October 2006 without the opportunity to pursue her statutory and constitutional rights to a hearing." (*Id.*, p. 14-15).  This could be interpreted as a contention that the length of time that she was on suspension was itself a due-process violation.  However, after careful review of her Complaint, ¶¶ 26, 27, and 28, and her argument on the present motion, we find that, fairly read, her only theory of relief is based on the decision in August 2004 to suspend her indefinitely as the violation of her due-process rights, not any alleged  failure to act in a timely fashion when her suspension became too long.  While it might be theorized that an unreasonably dilatory investigation could violate a state employee's due process right while she awaits a conclusion and continues on indefinite suspension without pay, in this case Ms. Jorman has failed to lay either a factual or legal foundation for asserting such a right and has similarly failed to elucidate the constitutional standard by which the court should determine such a violation.  Plainly stated, she did not present evidence that the investigations undertaken by the FSSA, the Indiana State Police, and the Indiana Inspector General, and the review by the Marion County Prosecutor were dilatory or unreasonably protracted.  And, as previously determined, Ms. Jorman has failed to demonstrate a genuine issue of fact undermining the decision in August 2004 to place her on suspension without pay pending an investigation as having been taken in bad faith or that it was a sham, or that investigations by the agencies were not at the time ongoing and followed her suspension.

18

We concede that there is a glaring lack of evidence in the record pertaining to the progress and nature of the various investigations during Ms. Jorman's suspension.  Mr. Hedden has alleged and presented evidence supporting his assertion that he suspended Ms. Jorman in good faith pending investigations into the serious charges against her, that his and other state and local agencies continued and/or undertook good-faith investigations into the charges during her suspension, and that the investigations were, or at least one of them was (the prosecutor's review), ongoing at the time of her formal termination in October 2006.  In order to demonstrate a genuine issue of fact that is material to the question of unconstitutional delay, Ms. Jorman would necessarily be obligated to present evidence supporting such a conclusion.  She should, for example, present evidence, if any there be, showing that the investigations were effectively concluded a significant time before her ultimate termination or that the investigations  were conducted in a significantly dilatory manner.  Moreover, she would need to adduce evidence that Mr. Hedden, himself, (because he is the only defendant remaining) was either responsible for the unreasonable delays in the investigations or, at least, that he was aware of them and could and should have acted to avoid the violation of Ms. Jorman's due-process rights, by, *e.g.*, expediting the investigations, if within his power; terminating her; or reinstating her.  Ms. Jorman has presented no such evidence, set forth no theory of unconstitutional delay, and presented no precedent in support of a claim that a suspended-while-investigated employee's due-process rights can be violated by lapse of time.  In short, she has failed to demonstrate that a jury could find in her favor on such an argument.

To summarize, a careful examination of her argument to the Court reveals that she did not assert, let alone develop, an unconstitutional-delay theory of due-process violation.  In the

one discussion of § 4-15-2-33 in her brief, her only argument was that no investigation was pending when she was suspended in August 2004 because FSSA's investigation had been completed by that time and that Mr. Hedden was merely shopping a criminal case to law-enforcement agencies. (Response, p. 16). This argument addresses only the time of the inception of her suspension, not its duration. Moreover, this argument has been fully discussed and rejected above. Legally and factually undeveloped arguments and assertions are necessarily waived. *Swanson*, 962 F.2d at 604. *See Boyd*, 481 F.3d at 524-25.

**Qualified Immunity.** Mr. Hedden has also moved for summary judgment on the grounds that he is protected from liability by qualified immunity because the principle that Ms. Jorman's suspension that due-process protections apply to disciplinary actions short of termination was not clearly-established at the time. The qualified-immunity inquiry proceeds in two steps: a court first determines whether there has been a constitutional violation and then whether the constitutional right was clearly-established at the time of the alleged violation. *Boyd*, 481 F.3d at 524. Having concluded above that no constitutional violation occurred here, there is no need to examine whether the right was clearly-established.

**Conclusion**

Because Plaintiff has failed to demonstrate a genuine issue of material fact, and judgment

is due Defendant Hedden as a matter of law, Defendant Hedden's motion for summary judgment

on Count 2 of Plaintiff's Complaint is GRANTED.  Final judgment shall now issue.

Date:   08/27/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Debra E. Albright
MONDAY RODEHEFFER JONES & ALBRIGHT
albright@mrjalaw.com

Kathryn Lynn Morgan
OFFICE OF THE ATTORNEY GENERAL
kathryn.morgan@atg.gov

Juliana B. Pierce
OFFICE OF THE ATTORNEY GENERAL
julie.pierce@atg.in.gov